Percy E. GRIFFIN, Petitioner,

v.

O. B. ELLINGER d/b/a Ellinger Paint and Drywall, Respondent.

No. B–5746.

Supreme Court of Texas.

June 9, 1976.

Goggan & Cain, Thomas S. Goggan, Austin, for petitioner.

Mary Ellen Felps, Joel B. Mitchell, Austin, for respondent.

DOUGHTY, Justice.

The question presented by this case is whether a corporate officer who signs a check on a corporate account without designating the capacity in which he signs is personally liable as the drawer of the check. We hold that, under the circumstances of the present case, the corporate officer is personally liable, and we therefore affirm the judgment of the Court of Civil Appeals.

Respondent O. B. Ellinger, doing business as Ellinger Paint and Drywall, sued Percy Griffin on three drafts signed by Griffin and drawn on the account of Greenway Building Company at the Northeast Bank of Houston. These drafts, totalling $3,950.00, were issued to Ellinger in payment for labor and materials furnished to Greenway for a construction project at Lakeway in Travis County. Greenway was prime contractor for the project, and Griffin was authorized to sign the drafts as president of the company. Northeast Bank had refused payment on the drafts because of insufficient funds in the Greenway account. Trial was to the court, which rendered judgment for Ellinger for $3,950.00. The Court of Civil Appeals affirmed. 530 S.W.2d 329.

Petitioner complains of the judgments below by two points of error: first, petitioner contends that the drafts show conclusively on their face that he was signing in a representative capacity only. Second, petitioner contends that extrinsic evidence establishes as a matter of law that the parties understood his signature to be in a representative capacity.

Section 3.413(b) of Texas Business and Commerce Code defines the obligation of the drawer of a draft as follows:

The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up.

Griffin is liable under this section as a drawer unless his signature was only as president of Greenway. To determine whether an authorized representative is personally liable on an instrument which he signs on behalf of his principal, we must look to Section 3.403 of the Code, which provides:

(a) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(b) An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(c) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

Each of the three drafts signed by Griffin were in essentially the same form. A copy of one of the drafts is reproduced below.

The first question is whether the draft shows on its face that Griffin signed in a representative capacity only. Although the draft clearly names the person represented, it does not show that Griffin signed only in his capacity as president of Greenway. Griffin contends, however, that considering the instrument as a whole, and taking into account the normal business usage of personalized checks, it should be apparent from the instrument itself that Griffin signed only as an authorized agent of Greenway. We disagree. We recognize that it is unusual to demand the individual obligation of a corporate officer on checks drawn on the corporate account, and that the more usual way of obtaining the personal obligation of an officer on such a check would be by endorsement. Business practice and usage are proper factors to be considered in construing the particular instrument under consideration. We also recognize that an instrument may disclose on its face that a signature was executed only in a representative capacity even though the particular office or position of the signer is not disclosed thereon. *Pollin v. Mindy Manufacturing Co.,* 211 Pa. Super. 87, 236 A.2d 542 (1967), cited by petitioner, is such a case. In *Pollin,* the plaintiff, a holder in due course of checks drawn on a corporate account, sued the signer of the checks, an agent of the corporation, asserting his personal liability as drawer. The checks, issued to pay employees of the corporation, were stamped with the name of the company and the designation "Payroll Checks"; the company name was also printed above the two signature lines in the lower right-hand corner. The defendant had signed under this printed name without designating his office or capacity. The court held, nevertheless, that the instrument considered as a whole showed that the signer was signing only in a representative capacity:

> In the present instance the checks clearly showed that they were payable from a special account set up by the corporate defendant for the purpose of paying its employees. This information disclosed by the instrument itself would refute any contention that the appellant intended to make the instrument his own order on the named bank to pay money to the payee.

236 A.2d at 545.

Unlike the checks in *Pollin,* we can find nothing on the face of the checks in the present case to show that Griffin intended to sign only in a representative capacity. Petitioner points out that each check is stamped by a "check protector," which imprinted not only the amount of the draft but also the company's name. Although the stamp clearly reveals the name of the principal, it does not aid petitioner because it gives no information as to the capacity in which *he* signed the instrument.

The fact that the name of the corporation appears on the check indicates that the account drawn upon is that of the corporation and that the funds in the account are the corporation's. While the drawer of a check is ordinarily the owner of

the funds in the account drawn upon, the Code does not require that this be so. Under Section 3.413, *any person* who signs a draft engages that, upon dishonor, he will pay the amount thereof to the holder. Indeed, under Section 3.404, the signer of a draft who has no authority to draw upon the account is nevertheless liable upon his contract as drawer to any person who takes the instrument in good faith for value. Petitioner points out that, since a corporation can only act through its agents, a personal signature is always required to authorize withdrawal of funds from a corporate account. Under Section 3.403, however, one signing an instrument is personally liable thereon even though he is authorized to and does in fact bind his principal, if he does not disclose that he is signing only in a representative capacity. In short, the burden is on the signer to relieve himself of personal liability by disclosing his agency. The fact that the instrument is an authorized draft drawn on a corporate account is not enough to disclose the representative character of the signature thereon. Section 3.403(c) expressly provides that the signer of an instrument may avoid personal liability by disclosing both the name of the organization of which he is an agent and the office he holds with the organization. Absent such a disclosure or its equivalent, the signer is personally liable on the instrument according to its terms, unless "otherwise established between the immediate parties" under subsection (b)(2). We hold that the checks in question do not show on their face that Griffin signed only in a representative capacity. Petitioner's first point of error is therefore overruled.

◼ Griffin next contends that extrinsic evidence of prior dealings between the parties proves as a matter of law that he signed only as an agent of Greenway. Under Section 3.403(b), extrinsic evidence is admissible between the immediate parties to the instrument to show that they agreed or otherwise understood that the signer would not be personally liable thereon, even though the instrument itself does not reveal the signer's representative capacity. The Code does not delineate what proof is neces-

sary to "otherwise establish" between the parties that the signer is not personally liable on an instrument which he intended to sign only in a representative capacity. Therefore, the general principles of law and equity are to be applied. Section 1.103. In *Seale v. Nichols,* 505 S.W.2d 251 (Tex.1974), this Court had occasion to construe Section 3.403(b). We there stated that, in order for an agent to avoid liability on his signature, "he must *disclose* his intent to sign as a representative to the other contracting party." 505 S.W.2d at 255. We also recognized that prior dealings between the parties are relevant in determining whether the parties understood the signature to be in a representative capacity.

◼ The trial court filed findings of fact, in which it found as follows: Griffin and Ellinger had "entered an agreement" that Ellinger would "do certain work on the project in question." Ellinger was never told who owned the Lakeway project, who would pay him, or who would be responsible for the payments, nor did he inquire. Griffin never told Ellinger that the checks were signed only on behalf of the corporation; he "simply signed the checks and delivered them without comment." Ellinger "had on numerous occasions received checks drawn on Greenway Building Company, Inc. from other officers of Greenway Building Company, Inc. and had never looked to these officers for payment thereon; such other checks have been paid as presented to the paying bank."

These findings, if supported by the evidence, are sufficient to support the trial court's conclusion that Griffin was personally liable on the checks under Section 3.403. Since it was Griffin's burden to prove that he disclosed his representative capacity to Ellinger, *Seale v. Nichols, supra,* the judgment must stand unless the evidence shows as a matter of law that he made such disclosure.

Griffin contends that the prior dealings between the parties establish his defense as a matter of law. The evidence shows that Ellinger had received checks for work done

on the project which were signed by other officers of Greenway, prior to the time that Griffin became Greenway's representative on the Lakeway construction site. Ellinger also admitted that the bills submitted for his work were billed to Greenway Building Company. These circumstances certainly do constitute evidence that Ellinger knew of Griffin's representative capacity when he received the checks signed by Griffin. There is evidence to the contrary, however. Ellinger testified that he understood that he was working for Misters Buxbaum and Wininger (officers of Greenway who signed checks prior to Griffin's arrival), and later Mr. Griffin. Ellinger further testified:

Q. But, at the time you received these checks in payment of goods and services that you provided, you were looking to the main payer on those checks, Greenway Building Company, Inc.?

A. No, I was looking for the name of Percy Griffin because he was the one giving me the checks.

.     .     .     .     .

Q. Were you aware that he was acting as an officer or in some sort of capacity for Greenway Building Company, Inc.?

A. I did not. [sic]

This testimony constitutes some evidence that Ellinger was not aware of Griffin's representative capacity when he received the checks in payment for his work. The issue was therefore one for the trier of fact which the trial court resolved in favor of Ellinger, and this Court has no authority to disturb the trial Court's findings. The judgment of the Court of Civil Appeals is affirmed.