**Phillip MENTESANA, Appellant,**

v.

**FABRICATORS INTERNATIONAL, INC., Appellee.**

**No. 20143.**

Court of Civil Appeals of Texas, Dallas.

March 27, 1980.

Rehearing Denied April 22, 1980.

Reid A. Rector, Erhard, Cox, Ruebel & Rector, Dallas, for appellant.

David W. Elrod, Haynes & Boone, Dallas, for appellee.

Before AKIN, CARVER and HUMPHREYS, JJ.

CARVER, Justice.

Phillip Mentesana, one of the defendants in the trial court, appeals from a summary judgment rendered against him and in favor of Fabricators International, Inc. on a promissory note. We find that the summary judgment proof presented fact issues as to whether Fabricators induced Mentesana to sign the note in blank and whether Fabricators thereafter completed the blank note strictly in accordance with Mentesana's authorization. Consequently, we reverse and remand.

The background facts are not in dispute. Fabricators was a supplier of equipment of all kinds suitable and necessary for the operation of a public restaurant. P.J.M. was a corporation operating two of these public restaurants and Phillip Mentesana was P.J.M.'s president. Negotiations between the two corporations led to a sale of equipment and credit extension by Fabricators to P.J.M. In addition to the obligation and security instruments in favor of Fabricators by the purchaser corporation P.J.M., Fabricators took the note in question. In the present suit, Fabricators sought to recover from P.J.M. on its account and to recover from Mentesana on the note in issue. With all parties before the trial court, Fabricators filed its motion for summary judgment supported by the affidavit of its credit manager as to the facts of liability of both P.J.M. and Mentesana. For clarity we reproduce the vital portions of such affidavit:

2. Fabricators and P.J.M., Inc., Individually, and d/b/a El Toro Restaurant and d/b/a El Presidente (hereinafter collectively referred to as "P.J.M.") entered

into a Security Agreement (the "Agreement") on November 3, 1977, pursuant to which Fabricators during the month of April, 1978, at the express request of P.J.M. furnished materials and rendered services to P.J.M. Fabricators presented its claim for payment to P.J.M. as set out in Plaintiff's Original Petition, attached hereto as Exhibit "A" and incorporated herein as if copied verbatim. Fabricators' claim is a liquidated money demand based upon the business dealings between the parties.

3. Although Fabricators has often requested P.J.M. to satisfy this obligation, P.J.M. has failed to pay and refused to perform its obligations pursuant to the Agreement. After all credits and offsets, the claim is past due and owing in the amount of $12,969.42, which represents the reasonable value of the materials furnished and services rendered to P.J.M.,

and is the sum which P.J.M. agreed to pay for these materials.

4. Defendant Phillip Mentesana ("Mentesana"), as the result of the negotiations between Fabricators and P.J.M. concerning the above-described indebtedness, agreed to and did execute and deliver to Fabricators a promissory note wherein Mentesana promised to pay to the order of Fabricators the sum of $14,-831.63, together with interest at the rate of ten percent (10%) per annum. However, Mentesana has continually refused to perform his obligations under the note. After all credits and offsets, the balance past due and owing to Fabricators under the note is $12,759.43, together with interest at the rate of ten percent (10%) per annum from April 14, 1978.

The note in issue was an exhibit to the affidavit and is reproduced here:

P.J.M. did not respond to the motion for summary judgment; however, Mentesana responded by affidavit which we reproduce in its vital elements:

In April, 1978, P.J.M., INC. entered into a transaction with FABRICATORS INTERNATIONAL, INC., pertaining to the purchase by P.J.M., INC. from FABRICATORS INTERNATIONAL, INC. of certain restaurant equipment and/or supplies. In connection with such transaction, in April, 1978 a blank Promissory

Note containing only the figure $14,-831.63 in the top left hand corner and the name P.J.M., INCORPORATED in the bottom left hand corner was presented to me for my signature. It was represented to me by FABRICATORS INTERNATIONAL, INC. acting by and through its duly authorized representative that the blank Promissory Note would ultimately by prepared in the name of P.J.M., INC. Based upon this representation and my understanding, I signed the blank Prom-

issory Note with the intent that I was signing it as President of P.J.M., INC. and not individually.

Mentesana also swore that the incomplete instrument delivered to Fabricators appeared thusly:

Mentesana urges that his affidavit and exhibit in response to Fabricators' affidavit and exhibits raise fact issues sufficiently to require the overruling of the summary judgment motion. Fabricators responds first that neither the trial court nor this court should consider the existence or non-existence of any fact issue from Mentesana's affidavit alone because Mentesana failed to "expressly" present to the trial court "by written motion, answer or other response" the ground relied upon for reversal. We reject Fabricators' argument that Mentesana's affidavit alone is insufficient. The "response" required to a motion for summary judgment is specifically set out in Tex.R.Civ.P. 166–A(c), which provides in part:

(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, the motion shall be served at least twenty-one days before the time specified for the hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing *may serve opposing affidavits or other written response.* . . . Issues not expressly presented to the trial court by written motion, answer *or other response* shall not be considered on appeal as grounds for reversal. . . . [Emphasis added.]

*See Duncan v. Horning, D.D.S.,* 587 S.W.2d 471 (Tex.Civ.App.-Dallas 1979, no writ); *Combs v. Fantastic Homes, Inc.,* 584 S.W.2d 340 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). We conclude that Mentesana's affidavit was a sufficient "response" to the motion and did present two issues to the trial court, i. e., that the instrument sued upon by Fabricators was delivered to the payee incomplete and that it was not completed by the payee according to the authority given. The resolution of these two issues will necessarily answer whether the note was executed in an individual or representative capacity.

Fabricators urges this latter question is the sole question before us and is controlled by Tex.Bus. & Com.Code Ann. § 3.403 (Tex.UCC) (Vernon 1968) which provides in part:

(b) An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the in-

strument does not name the person represented but does show that the representative signed in a representative capacity.

(c) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

However, Tex.Bus. & Com.Code Ann. § 3.115 and § 3.407 (Tex.UCC) (Vernon 1967) provide:

§ 3.115. Incomplete Instruments

(a) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still *incomplete* in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

(b) If the completion is unauthorized the rules as to material alteration apply (Section 3.407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting.

.    .    .    .    .

§ 3.407. Alteration

(a) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(1) the number or relations of the parties; or

(2) *an incomplete instrument, by completing it otherwise than as authorized*; or

(3) the writing as signed, by adding to it or by removing any part or it.

(b) As against any person other than a subsequent holder in due course

(1) alteration by the holder which is both fraudulent and material *discharges* any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(2) no other alteration discharges any party and the instrument may be en-

forced according to its original tenor, *or as to incomplete instruments according to the authority given.* [Emphasis added.]

We are thus presented with the question of which provision of the statutes control when the facts in the respondent's affidavit are taken to be true for the purposes of the motion for summary judgment. Fabricators urges that section 3.403 should prevail so as to exclude *as a matter of law* any possibility that Mentesana's affidavit it true or that discharge is available to Mentesana under sections 3.115 and 3.407. It appears to us that the apparent conflict of these statutory provisions is not an actual conflict since the provisions address different fact situations. Section 3.403 addresses the instance where an authorized representative completes and delivers the instrument in the form sued upon but neglects to reflect who he represents or his representative capacity. Sections 3.115 and 3.407 address the instance where an authorized representative signs an instrument "while still incomplete" and charges the payee (in this instance) to complete in accordance with whatever authority is given, on the statutory pain of *discharge* if such authority is not strictly obeyed. In short, under section 3.403 one may not be excused for his own neglect but under sections 3.115 and 3.407 one may complain of the neglect of another charged to faithfully complete an instrument in strict accordance with the authority given. According to Mentesana's affidavit and exhibit, the note sued upon was signed "while still incomplete" in the "necessary respect" of the payee, the interest, place of payment, and the time of payment. When "an instrument is signed while still incomplete in any necessary respect," as in our case, the *extent* of the incompleteness, as well as the *extent* of faithful completion, must be tried under sections 3.115 and 3.407 of the code. When an instrument is complete when *signed*, section 3.403 of the code places the burden upon the signer to reflect the true maker, if other than the signer, by using the maker's name and the signer's representative capacity. This reasoning answers the apparent conflict between provi-

sions of the code and does not invite abuse of either. We reverse and remand this cause for trial to determine whether the maker's identity was incomplete (along with payee, interest, and place and time of payment) and was to be completed by the payee by affixing to Mentesana's scripted name his representative capacity and the name of the party represented.

The record presented on this appeal by Mentesana alone appears to have awarded Fabricators, who had only one debt balance, two separate judgments against two separate defendants which, if each judgment had been paid, would have meant Fabricators would collect approximately twice what it was owed, plus two attorney's fees. P.J.M. did not appeal the judgment against it which included judicial foreclosure and sale of the security. Any payment by P.J.M. on the judgment against it, or any credit resulting from the order of sale, would appear to warrant a credit on the obligation asserted by Fabricators against Mentesana on the note. These matters were not briefed or argued as a part of the summary judgment appeal by Mentesana, and we trust they can be resolved by the responsible counsel of the parties and the careful trial judge.

AKIN, Justice, dissenting.

I cannot agree that § 3.403 does not apply where the note is incomplete at the time of signing. Neither can I agree that § 3.403 only applies in the limited situation where the note is complete in all respects at the time it is signed by the maker. In my view, § 3.403 governs the determination of the identity of the maker of the note whether the note was complete or blank when signed. Consequently, I cannot agree that Mentesana's affidavit, which attacks only the capacity in which he signed the note, raises a fact issue on the identity of the maker. Accordingly, I must dissent.

The majority has erroneously rested its decision on § 3.115 [1] governing incomplete instruments. That section provides:

§ 3.115. Incomplete Instruments

(a) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, *but when it is completed in accordance with authority given it is effective as completed.*

(b) If the completion is unauthorized the rules as to material alteration apply (Section 3.407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting. [Emphasis added.]

As I read § 3.115(a), that section is limited to completing the language necessary to make the writing an instrument. The note is effective as completed here because it was "completed in accordance with the authority given so as to make it an instrument." This is true because Mentesana does not assert that any incomplete blank on the note at the time he signed it was not completed as authorized, but rather asserts that the words were not added to his signature to show that he signed the note merely as an agent of another. The absence of these terms do not make the instrument incomplete in a "necessary respect" under § 3.115. *See* Official Comment (2) to § 3.115.

The majority holds that because the note was incomplete when Mentesana signed it he may attack by parol evidence the capacity in which he signed the note even though all blanks in the note were completed in accordance with the agreement of the parties. The majority then focuses on § 3.115(b) which states that if the completion is unauthorized, the rules pertaining to alteration apply (§ 3.407). Thus, they conclude that whenever a person signs a note

1. The applicability of §§ 3.115 and 3.407 were neither raised in the trial court nor argued to this court. Tex.R.Civ.P. 116–A. Because the applicability of these sections of the code are affirmative defenses, the burden to establish

them was upon Mentesana. *Seale v. Nichols*, 505 S.W.2d 251 (Tex. 1974). Indeed, this entire argument is advanced for the first time by the majority.

that is incomplete when signed, the maker can avoid the consequences of § 3.403(b), which establishes the personal liability of an authorized agent who fails to disclose his capacity as agent at the time he signs the instrument. The majority then holds that § 3.403 applies only to the limited situation where the note is complete in all essential respects when signed. I cannot agree because I see no difference in the situation here where Mentesana signed the note in blank and all essential blanks in the instrument were completed in accordance with their agreement and the situation where these blanks were completed before he executed the note. In both instances, I would hold that § 3.403(b) places the burden upon the person signing even an incomplete instrument to name his principal or disclose his capacity as agent in order to escape personal liability.

Section 3.403 provides:

(b) An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(2) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

According to J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 13–4, at 403 (1972), "The Code lays down some simple rules for determining when an authorized agent's signature subjects him to personal liability. Under § 3–403(2)[2] the agent's liability turns entirely on the written symbols he uses to disclose his agency status." Section 3.403(b)(1) sets up

a firm rule, mandating that a person signing only his name to an instrument without disclosing his principal or indicating that his signature is made in a representative capacity, is personally obligated on the note and is precluded from introducing parol evidence to show otherwise. Section 3.403(b)(2) allows the signer to introduce parol evidence to disprove his personal obligation, but only under very specific circumstances. First, the suit must be between the immediate parties to the note. Second, the note must either disclose the name of the principal or indicate that the signature on the note was made in a representative capacity. *Id.* at 403–405.

Because this suit is between the immediate parties to the promissory note, the first requirement of § 3.403(b)(2) is met. But the face of the note in the case at bar contains neither the name of the principal nor a designation of agency capacity so as to fall within the ambit of § 3.403(b)(2). *See Griffin v. Ellinger*, 538 S.W.2d 97, 99 (Tex. 1976). *See also Seale v. Nichols*, 505 S.W.2d 251, 254 (Tex. 1974). Consequently, under the facts present, I would hold that Mentesana is liable under the express language of § 3.403(b)(1) and that Mentesana's allegation that he signed the note as agent for a corporation is inadmissible as a matter of law. *See* Official Comment (3) to § 3.403.

Neither does the fact that the name of the alleged principal, "P.J.M. Incorporated d/b/a El Toro Restaurants," appears in the lower left hand corner of the note on lines labeled address and telephone satisfy the requirement of § 3.403(b)(2). Since the name appears only under the address and telephone label, it appears to be merely a means of locating the maker rather than the naming of a principal from which repayment is expected. On this point I agree with the Supreme Court of Georgia, which stated in *Southern Oxygen Supply Co. v. Golian*, 230 Ga. 405, 197 S.E.2d 374, 375 (1973):

---

**2.** The Texas version of the UCC was adopted with letters corresponding to the paragraph numbers of the original version. Thus a reference to UCC 3–403(2) corresponds to Tex.Bus. & Comm.Code Ann. § 3.403(b) (Tex. UCC) (Vernon 1968).

There is nothing on the face of the note involved here which shows the agency of the signer. The fact that a name similar to that of the corporation asserted to be the real maker of the note appears in the address does not name the person represented within the meaning of the Code Ann. § 109A–3–403(2)(b) so as to make a question of fact as to whether the signer was acting in a representative capacity.

The majority's holding that Mentesana's allegation that appellee promised to later add terms to make the note reflect a corporate obligation rather than a personal obligation of Mentesana, is inconsistent with *Griffin v. Ellinger*, 538 S.W.2d 97 (Tex. 1976). The supreme court in *Griffin* stated that under § 3.403, the question is whether the instrument shows on its face that the signature was made in a representative capacity. *Id.* at 99. "In short, the burden is on the signer to relieve himself of personal liability by disclosing his agency." *Id.* at 100. The supreme court held that if the face of the note fails to disclose agency capacity, the signer is personally obligated under § 3.403. *Id.* In that case, the face of the note did contain the name of the principal so the supreme court considered whether the signer had "otherwise established"

his representative capacity under § 3.403(b)(2) and concluded that he had not. In the case at bar, the face of the note discloses neither the name of the principal nor Mentesana's agency capacity. Consequently, applying the clear language of *Griffin*, § 3.403(b)(1) is the applicable provision here and parol evidence is inadmissible to prove agency capacity. *Bostwick Banking Co. v. Arnold*, 227 Ga. 18, 178 S.E.2d 890, 894 (1970).

In conclusion, the express language of § 3.403, as construed by the supreme court in *Griffin v. Ellinger*, provides that a person who signs a note as an agent is personally obligated on the note and is precluded from showing otherwise unless he meets his burden under § 3.403(b)(2) of making the face of the note reflect his agency capacity. *Seale v. Nichols*, 505 S.W.2d 251, 254 (Tex. 1974). This Mentesana failed to do. Accordingly, I dissent.