BILL E. NICHOLS AND JENCY NICHOLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nichols v. Commissioner
Docket No. 23433-81.
United States Tax Court
T.C. Memo 1983-535; 1983 Tax Ct. Memo LEXIS 251; 46 T.C.M. (CCH) 1259; T.C.M. (RIA) 83535; August 30, 1983. Donald L. Cuba, for the petitioners. Ana G. Cummings, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined a deficiency of $16,517.67 in petitioners' Federal income tax for the taxable year 1974. The issue for decision is whether a debt became worthless in 1977 so as to entitle petitioners to a bad debt deduction in that year and a net operating loss carryback to 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Bill E. and Jency Nichols [1] (petitioners) are husband and wife who were legal residents of Boerne, Texas, *252 at the time they filed their petition in this case. They timely filed a joint Federal income tax return for 1974 with the Internal Revenue Service Center in Austin, Texas. Petitioner was a self-employed manufacturer of stucco, glass-reinforced stucco products, and other cement products during the year in issue. Prior to that time, from 1964 through December 1976, he was employed by Barrett Industries (Barrett), also a manufacturer of cement and stucco products. From August 1972 through December 1976, petitioner served as president and general manager of Barrett and received a salary of $45,000 plus 10 percent of the company's net profits. During petitioner's employment at Barrett, the company market a new surface bonding cement product called "surewall" which it sold to Valley International Rancho Viejo Country Club, Inc. (Rancho Viejo), a resort community in Brownsville, Texas. Rancho Viejo was in the process of expanding its resort community by building 110 more housing *253 units. Sure-wall was used in these units. During this expansion, Rancho Viejo began to experience financial difficulties. The housing units were not selling quickly due to problems with mortgage financing. Rancho Viejo was unable to complete the units or to pay its suppliers and subcontractors. Rancho Viejo offered the suppliers and subcontractors first liens on some of its properties. Barrett obtained first liens on several lots as security for the money owed to Barrett for supplying sure-wall. In order to resolve its financial difficulties and to create additional working capital, Rancho Viejo approached several individuals and organizations, including Barrett, about forming a partnership to purchase the amenities of Rancho Viejo, e.g., its tennis courts and golf courses. The partnership would then lease the amenities back to Rancho Viejo. Petitioner, representing Barrett, signed a subscription agreement for this partnership. The partnership, Los Conquistadors, filed a limited partnership agreement on October 4, 1976 in Texas. It received commitments from twenty individuals, including petitioner, who was representing Barrett. Needing funds immediately, Bill Bass, the *254 general partner of Los Conquistadors asked seven of these individuals to assist the partnership in obtaining a loan of $280,000 from Pan American Bank. A series of documents was then executed with petitioner signing first a guarantee and then a note, resulting in his assuming personal liability for $40,000 of the $280,000 loan. Each of the other six individuals also assumed liability for their proportionate share of the loan. Pan American Bank transferred the money to a trustee acting on behalf of the seven individuals. The trustee then advanced the $280,000 to Los Conquistadors. Los Conquistadors was to repay the money directly to Pan American by funds obtained from the sale of additional partnership shares. Petitioner tendered his resignation to Barrett on November 3, 1976, effective December 31, 1976. Los Conquistadors and Rancho Viejo filed for an arrangement under Chapter 11 of the Bankruptcy Act on December 7, 1976. In a statement filed in the bankruptcy court, Los Conquistadors listed an unsecured claim owed to Barrett Industries of $40,000. On February 18, 1977, petitioner was contacted by Pan American Bank and advised that the $40,000 note was due on March 7 *255 and that he was liable for its payment. The bank had contacted Barrett which refused to pay the loan. Petitioner made a cash payment of $10,595.98 and renewed the balance of the note for six months. Petitioner made no additional payments on the note in 1977. The bankruptcy proceedings against the partnership were dismissed in November 1977 for want of prosecution. The partnership claimed a loss of $722,595 on its information return for 1977. Schedule K-1 thereof listed petitioners' share of that loss as $28,985. Petitioners claimed a deduction on their 1977 return in that amount. OPINION Respondent disallowed petitioners' deduction for their claimed distributive share of a partnership loss. While petitioner originally sought a deduction of $28,985 as his share of a partnership loss, he has abandoned this argument and now seeks a deduction under section 166 [2] for a business bad debt. Petitioner contends that he guaranteed the debt of Los Conquistadors on behalf of Barrett. He also contends that had he not satisfied the guarantee, the bank would have obtained a judgment against him causing damage to his business reputation. Accordingly, petitioner maintains that *256 he should be allowed a deduction for a business bad debt under section 166 because the debt was acquired in the course of his trade or business. Alternatively, he maintains that he should be allowed such a deduction because his guarantee of the debt was motivated by his expectation of increased profits, i.e., because he was entitled to ten percent of Barrett's profits, an increase in Barrett's sales would bring a resultant increase in his compensation. Respondent contends that petitioner has failed to establish any motivation, dominant or otherwise, for his payment in 1977 of $10,585.98 and his renewal of the remainder of the debt. He asserts that petitioner has offered no evidence that when he resigned from Barrett he agreed to assume its liabilities. Thus respondent asserts that petitioner has failed to carry his burden of proving that he incurred a business bad debt, and therefore no deduction should be allowed. We defer our discussion of the deductibility of the debt to determine the debtor/creditor relationship at hand. Based on the facts herein, we think the *257 petitioner was a creditor of Los Conquistadors. Petitioner signed a note for $40,000. In signing this note he became personally liable for $40,000 of the loan. Petitioner testified at trial that he was guaranteeing the loan in his capacity as a representative of Barrett and that Barrett, and not he, had a partnership interest in Los Conquistadors. However, petitioner took responsibility for payment of the loan. When he was contacted by the holder of the note and advised that he was liable for its payment, petitioner made a payment of $10,595.98 and renewed the note for six months, without contacting Barrett. [3]
*258 Petitioner indicates that it was a mistake that his signatures on the note and the guarantee were not made in his representative capacity. However, in other situations when petitioner was acting for Barrett, he signed documents in a representative capacity, placing "Barrett Industries" after his name. Petitioner is an experienced businessman, surely well aware of the consequences of signing a note solely in his own name. He testified that he was acting for Barrett Industries to guarantee a loan made by Pan American Bank to Los Conquistadors. Assuming this is true, why they did petitioner later pay the debt without contacting Barrett? While petitioner's testimony raises a factual issue, we are not required to hold in accordance with such self-serving testimony. Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. What in effect occurred was that Pan American Bank loaned petitioner $40,000. He then loaned the money to Los Conquistadors. Despite our disagreement with petitioner concerning the proper debtor/creditor relationship in this case, the petitioner would still be entitled to a deduction under section 166 if *259 he has satisfied its requirements. Section 166 permits a deduction for bona fide bad debts which become worthless during the taxable year, here 1977. Worthlessness is factual question and the taxpayer bears the burden of proving that fact. Mueller v. Commissioner,60 T.C. 36 (1973), affd. in part and revd. in part 496 F.2d 899 (5th Cir. 1974); Rule 142(a), Tax Court Rules of Practice and Procedure; see New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Respondent contends that petitioner has not proven that the loan was uncollectible on December 31, 1977, the year in which petitioner deducted the loss. We agree. We therefore hold that petitioner is not entitled to a deduction for a bad debt in 1977. [4]
Petitioner offered evidence that Los Conquistadors and Rancho Viejo filed for bankruptcy on December 7, 1976. However, one of petitioners' witnesses, Bill Bass, the general partner of Los Conquistadors, testified as follows: Q: The Chapter 11 continued for approximately how long, Mr. Bass? *260 A: Until November of '77, and then it was dismissed. The company [Los Conquistadors] was not declared bankrupt. * * * Q: The Court dismissed it. A: Right. The entire proceeding was dismissed as if it had never been filed. Q: And what happened to the properties? A: The properties that Brownsville had were foreclosed on by Brownsville Savings; the properties that Pittsburg National Bank had were foreclosed upon by Pittsburg Bank. The above testimony indicates that Los Conquistadors was not bankrupt. We also note that Los Conquistadors had presented the bankruptcy court with a plan for full payment of its creditors. After the proceeding was dismissed several creditors satisfied liens that they had on properties held by the partnership. Petitioner has not shown that his debt was uncollectible by the end of 1977. Accordingly, respondent's determination is sustained. To give effect to our disposition of the issue herein, Decision will be entered for the respondent.
Footnotes
1. With respect to the items at issue herein, Jency Nichols is a petitioner only because she filed a joint return with her husband. References to petitioner are intended to refer to Bill E. Nichols.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1977.↩
3. We note that under Texas law an agent or representative who does not sign in a representative capacity is personally obligated. Texas Business and Commerce Code Ann. § 3.403 (Vernon 1968); see Walker v. Republic National Bank of Dallas,559 S.W.2d 438 (Tex. Civ. App. 12th Dist. 1977); Griffin v. Ellinger,530 S.W.2d 329 (Tex. Civ. App. 3d Dist. 1975), affd. 538 S.W.2d 97 (Texas 1976). Parol evidence is inadmissible to disestablish the signer's obligation. Tex. Business and Commerce Code Ann. § 3.403 (Vernon 1968), Comment 3. See Griffin v. Elligner,supra.↩
4. Our disposition of this issue obviates the necessity of deciding whether the debt was a business or nonbusiness bad debt.↩