Kent **STEPHENS**, Appellant,

v.

**FELIX MEXICAN RESTAURANT, INC., and Mrs. Felix Tijerina, Sr., Appellees.**

No. B14–93–00335–CV.

Court of Appeals of Texas, Houston (14 Dist.).

April 13, 1995.

Rehearing Overruled May 11, 1995.

Craig Welscher, Houston, for appellant.

Howard A. Lang, Jr., Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Kent Stephens appeals a judgment granted in favor of Felix Mexican Restaurant and Mrs. Felix Tijerina, Sr. (collectively, "Felix"), on the grounds that: (1) the liability issue submitted to the jury was not pled; and (2) the evidence was insufficient to support the verdict. We affirm in part and reverse and remand in part.

On April 4, 1978, Felix leased restaurant space (the "space") in a shopping center from Jim R. Smith ("Smith") for a ten-year term (the "lease"). A confusing sequence of transactions followed.

On March 2, 1983, Felix subleased the space to Greene Streets, Inc.[1] On that same date, Felix also subleased the space to Club September, Inc., formerly known as Greene Streets, Inc. Stephens signed this agreement as President of Club September.

On March 7 and 10, 1983, respectively, articles of incorporation for Greene Streets were signed and filed with the Texas Secretary of State.[2]

A document dated June 1, 1983 provided that Felix would assign the lease to Club and Restaurant Concepts, Inc., and that Stephens would guarantee the obligations of Club and Restaurant Concepts thereunder. However, this document was unsigned by Felix, and the purported signatures for Stephens, both on behalf of Club and Restaurant Concepts and as individual guarantor, were spelled "Stevens."[3]

In June of 1983, all of the stock of Greene Streets was sold to Stephens, Stephens was elected its President, and the corporation's name was changed to Club September, Inc.

On January 21, 1985, Club September's charter was forfeited for failure to pay franchise taxes. On April 2, 1985, Stephens, on behalf of Club September, signed a sublease of the space to Swizzlers, Inc. In June of 1985, the lease went into default.

Smith filed suit against Felix to collect the amount due under the lease.[4] Felix, in turn, filed a cross-action against Stephens based on breach of the June 1, 1983 "agreement," indemnity, contribution, alter ego, piercing the corporate veil, and lack of corporate formalities. In addition, the cross-action alleged that:

> Said KENT STEPHENS individually guaranteed the debt of said corporations and proceeded to occupy and use and take advantage of all the benefits accruing under said lease agreement and consequently now should be estopped or determined to have waived any claim that said guarantee and actions on his part do not bind him to the lease obligations and the guarantees pertinent thereto.

At trial, however, the only question submitted to the jury regarding Stephens' liabili-

---

1. This agreement was signed by Messrs. Robert Moss and Norman Buff on behalf of Greene Streets.

2. Stephens was not listed as a director, incorporator or otherwise therein.

3. Stephens testified that he did not sign this document; Smith testified that Stephens did sign it.

4. The portion of the judgment awarding Smith damages against Felix has not been challenged on appeal.

ty was based on ratification.[5] Stephens objected to the submission of this question on the grounds that there was no evidence or, alternatively, insufficient evidence "for any finding that Kent Stephens in his personal capacity ratified any sublease or personal guaranty arising out of the shopping center lease." This objection was overruled and the jury answered the question "Yes." Stephens' motions for judgment non obstante veredicto ("JNOV") and new trial were denied, and judgment was entered against him.

In the first of his four points of error, Stephens claims that the jury question regarding his liability should not have been submitted because ratification was not pled.

■ A trial court's discretion in submitting jury questions is subject to the requirements that the questions be supported by the pleadings and evidence. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). In this regard, "[p]leadings should give fair and adequate notice of the facts upon which the pleader relies in order that the adverse party may properly prepare his defense thereto." *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex.1982).

■ In this case, whether Felix adequately pled ratification is a close issue. Although Felix's cross-action does not use the term "ratification" or set forth the elements of that cause of action, it does allege that Stephens took advantage of the benefits of the lease as the basis for claiming estoppel and waiver. Similarly, acceptance of benefits was also a central element of the jury instruction on implied ratification.

■ Nevertheless, in *Mexico's Indus., Inc. v. Banco Mexico Somex, S.N.C.*, 858 S.W.2d 577, 582 (Tex.App.—El Paso 1993, writ denied), it was held that submission of a jury question on ratification was not adequately supported by pleading acceptance of benefits under a theory of recovery resembling estoppel or waiver. However, that opinion concluded (without explanation) that the error was not reversible, and affirmed the judgment. Assuming, without deciding, that the finding of error in *Mexico's Industries* was correct and applies to this case, we will consider whether any such error could have been harmful here. *See* Tex.R.App.P. 81(b)(1).

Stephens contends that submission of the ratification question was harmful because it was the only question submitted on his liability. However, this contention assumes that, if his objection had been sustained, the trial court would have been required to submit *no* question on liability against him.

On the contrary, however, had Stephens properly objected to the lack of pleading,[6] and the trial court sustained that objection, Felix would have thereby been apprised of the need to request a trial amendment. Presented with such an amendment, the trial court would have been obliged to grant it, and Stephens' recourse would have been to seek a continuance of the trial. *See* Tex. R.Civ.P. 66; *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex.1990).

Stephens has not demonstrated that a continuance would have been warranted by a trial amendment adding ratification. He has made no showing that his ability to defend the case was prejudiced by the alleged pleading defect, that additional discovery was necessitated by the ratification claim, or that

---

5. The question and instruction submitted to the jury were as follows:
   Do you find that Kent Stephens, by his actions taken in a personal capacity, ratified any valid sublease or personal guaranty arising out of the Shopping Center Lease?
   You are instructed that ratification may be expressed or implied. Express ratification means the affirmative adoption by a person, as binding upon himself, of a prior act by another that would not bind him except for his subsequent assent. Implied ratification occurs if a person, with full knowledge of the previous unauthorized act of another, nevertheless retains the benefit resulting from the prior unauthorized act.

6. As set forth above, Stephens objected to submission of the jury question on lack of evidence, but not on lack of pleadings. In order to preserve error under Tex.R.App.P. 52(A), an objection at trial must generally be based on the same grounds as asserted on appeal. However, it has also been held that "although the complaining party does not object to the testimony on the issues, but does object to their submission on some tenable ground, he cannot be regarded as impliedly consenting that they be tried when not raised by the pleadings, as contemplated by Rule 67." *Harkey v. Texas Employers' Ins. Ass'n*, 146 Tex. 504, 208 S.W.2d 919, 922 (1948).

his defense would have been different if ratification had been clearly pled. Under these circumstances, we are not persuaded that any error from submitting the jury question on ratification was reversible due to lack of pleading. Accordingly, point of error one is overruled.

In his second, third and fourth points of error, Stephens complains that his objection to the jury question should have been sustained, and his motions for JNOV and new trial granted because there was no evidence or insufficient evidence to support a jury finding that he ratified any sublease or personal guaranty.

■ "In deciding a 'no evidence' point, this court must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If there is some evidence, i.e., more than a scintilla, to support the finding, the no evidence challenge will fail and the finding will be upheld. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

■ On the other hand, "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983) (citations omitted). Similarly, when circumstantial evidence is consistent with either of two facts, and nothing shows that one is more probable than the other, neither fact can be inferred. *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 662 (Tex.1987).

■ In this case, based on the question and instruction submitted, the jury found that Stephens expressly or impliedly ratified a sublease or guaranty agreement by actions he took in his personal capacity, as contrasted from his capacity as a representative of the various corporations. To support this verdict, there must have been evidence either that: (a) Stephens affirmatively adopted a sublease or guaranty as binding upon himself (express ratification); or (b) Stephens personally retained the benefits of a sublease or guaranty (implied ratification).

The evidence relied upon by Felix to show ratification by Stephens was that: (1) Stephens' signature appears as an individual guarantor on the June 1, 1983 assignment document, and Jim Smith testified that this was Stephens' signature; (2) Stephens signed the March 2, 1983 sublease agreement on behalf of Club September before that corporation was formally incorporated; (3) three payments to Felix for purchase of equipment and rent were made with unmarked, temporary checks which were signed by Stephens but did not reflect that they were drawn on a corporate account or on behalf of a corporation; (4) the April 2, 1985 sublease was executed by Stephens on behalf of Club September after it had forfeited its charter; (5) the April 2, 1985 sublease contains a reference to an agreement which could be the June 1, 1983 assignment document;[7] and (6) on a June 20, 1983 typed letter to Felix which he signed as President of Club September, Stephens added a handwritten note which he signed without again indicating that it was on behalf of Club September.

As to implied ratification, this evidence does not show or infer that Stephens *personally* received any benefits of a sublease or guaranty, apart from whatever benefits were

7. The April 2, 1985 sublease contained the following language:

Lessee acknowledges that Lessee has read and understood all of the terms and conditions of the Master Lease [interlineation:] And the assignment agreement dated ___ by and between Jim R. Smith, Felix Mexican Restaurants, Inc., and Kent Stevens, including the permitted use clause contained therein.... [end interlineation] and understands that this Lease is fully subject to the terms and conditions thereof.

Felix contends that the interlineated portion could only refer to the unsigned June 1, 1983 document because that was the only document between Smith, Felix and Stephens, and the only document which contained a "permitted use clause," and because the misspelling, "Stevens" appears in both. Thus, according to Felix, when Stephens signed the April 2, 1985 sublease he did so with knowledge of the June 1, 1983 document, and thereby ratified it even if he did not sign it originally.

received by his corporations. Lacking evidence of a retention of benefits by Stephens personally, we are without evidence to support a finding of implied ratification by him.

■ We therefore consider the evidence in the context of express ratification. Because the June 1, 1983 assignment document was unsigned by Felix as primary tenant, it was not an enforceable contract and, thus, provided no agreement which could be ratified by Stephens. Therefore, neither Stephens' signature on that document, nor the April 2, 1985 sublease, constitutes a ratification of that document.

■ Similarly, none of the other items of evidence expressly or directly manifest an affirmative adoption by Stephens of a sublease or guaranty as binding upon himself personally. At most, each is an item of circumstantial evidence which could support an equal inference either that he did or did not.[8] Under these circumstances, we are without evidence to support a finding of express ratification. *See $56,700 in U.S. Currency,* 730 S.W.2d at 662.

Felix argues that the judgment should nevertheless be affirmed because personal liability against Stephens was established by this evidence on claims other than ratification.[9] However, by failing to request jury questions on any other such claims, Felix waived them. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991).

Accordingly, Stephens' no evidence point is sustained.[10]

■ Although judgment is usually rendered for the appellant upon a finding of "no evidence," such a case can instead be remanded for new trial if the interests of jus-

tice so require. *Nat'l Life and Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). In this case, had Stephens' objection to the ratification question based on lack of evidence been properly sustained, Felix would have thereby been apprised of the need to request a jury question on another theory of recovery. Because this did not occur, we find that the interests of justice are better served by remanding the case for new trial rather than by rendering judgment.

Accordingly, the portions of the trial court's judgment assessing liability and awarding damages, interest, costs and attorneys fees against Stephens are reversed and remanded for new trial. The remainder of the trial court's judgment is affirmed.

---

**8.** Felix cites *Griffin v. Ellinger,* 538 S.W.2d 97 (Tex.1976), for the proposition that Stephens' use of unmarked checks subjected him to personal liability. However, that opinion addressed only whether a corporate officer who signs a corporate check without designating his corporate capacity thereon is personally liable as drawer of the check where it is dishonored for insufficient funds. Because *Griffin* did not address whether such a signature amounted to a personal ratification of the underlying obligation, it is not instructive in the present case.

**9.** A promoter can, for example, be personally liable for entering into a contract in the name of

a corporation which has not yet been formed. *See Aloe Ltd., Inc. v. Koch,* 733 S.W.2d 364, 366 (Tex.App.—Corpus Christi 1987, no writ). Similarly, if a corporation's charter is forfeited for failure to pay taxes, a director or officer of the corporation can be personally liable for corporate debts incurred from the time the tax was due until corporate privileges are revived. *See* Tex.Tax Code Ann. § 171.255 (Vernon 1992).

**10.** Because we sustain the no evidence point, we do not reach the factual insufficiency point.